DETERMINED IN THE

# Supreme Court of Judicature,

OF THE

# STATE OF NEW JERSEY,

## AT FEBRUARY TERM, 1822.

---

THOMAS WILSON *against* JOSEPH WILSON.

IN CASE.

1. Charges of cash, paid, advanced, or lent, written on one of the last leaves of a book, detached from the daily *entries and accounts* by sundry intervening blank leaves, and dated during the time of such entries and accounts, not evidence to go to the jury.

2. Book of account not evidence of a single charge of cash, or of two or three charges of cash standing alone.

3. *Query*, whether they are evidence of cash at all?

---

The nature of this case will fully appear from the opinions delivered. It came before this court upon a rule to shew cause why the verdict, which had been rendered for the plaintiff, should not be set aside.

*Wall*, in support of the rule. *Armstrong*, contra.

FORD, J. This is a rule to shew cause why a verdict for the plaintiff, of $350, should not be set aside on account of the admission of illegal evidence. The plaintiff's declaration contained a count for *money lent*, and in support thereof he gave in evidence his *book of account* containing several charges *for cash*, amounting altogether to more than eight hundred dollars.

According to the principles of the common law, a man's book of account cannot be produced in evidence in his favor; but a contrary practice has prevailed for such a great length of time throughout all the courts of judicature in this state, as to have formed a general rule quite the other way, that every man's book of account *is* evidence in his favor, provided the entries therein made are original entries, and were made at the time the transactions took place, or as nearly at the time as is usual. But this general rule never obtained in such latitude as to make everything lawful evidence that a man chooses to write in his book, for then he might enter in it the testimony of an absent witness, the confession of an adversary, or the service of a notice. The general rule extends to no other entries than for goods and articles sold; work, labor and services performed by a man, his servants, and means, and materials found and provided. Beyond these limits, which take in all trades and professions, entries in a man's book never were, and never ought to be, evidence in his favor. The exceptions to the general rule are, therefore, both numerous and important.

1. The charge of a bond, note or receipt in a book is no legal evidence of them or their contents. If a man enter under a certain date, " J. S. this day gave me his bond for $100, or note for $5," it does not follow, because a book of account is evidence in the owner's favor, that such entries are to be received as evidence of the bond or note, for the general rule comprehends only articles sold, work done, or materials provided, as above mentioned.

2. The entry of a special agreement in a man's book is no sort of evidence thereof ; as if a man should enter thus on his book : " J. S. agreed to allow me $10 for trespass done by his cattle," or, " to do the inside carpenter work of my house for $500."

3. Another exception is, that book entries are no legal evidence to prove the borrowing, lending or payment *of money ;* as if a man enters in his book thus : " Paid J. S. this day, $500 in full of my bond," or, " in part of my note," or, " J. S., Dr., to cash $50," or, " to cash lent $100." Such entries are not to be received as evidence of *the fact,* because they cannot come under the rule of articles sold, work or services done, or materials furnished. These naked transactions *in money* have ever been conducted, not in books, but by bonds, bills, mortgages, notes or receipts, excepting some petty and irregular instances deserving no weight whatever against the rule. Money has never been considered analagous to goods or other articles sold for *a price.* As a branch of business carried on by banks, brokers, scriveners and money-lenders, it is always carried on by the means before mentioned ; and if each of this description might dispense with other evidence, and resort to mere entries in their books of uncircumstantial and naked *money,* (as assuredly they may if others may) the consequences to society would be exceedingly injurious. It is not to be denied, that some careless people, in . cases mostly of inconsiderable amount, have resorted to book entries only of cash, when they knew it to be wrong ; and some parties, even in litigated accounts, knowing such small charges to be true in fact, have raised no objection to them, and by these and other means many such items have slidden into legal settlements. But the great principle, that book entries *for cash* are not legal evidence, has been often decided, and about thirty years ago this very point received a solemn determination in this court upon a writ of error to the Com-

mon Pleas of Essex. I am, therefore, of opinion, that there ought to be a new trial in this case, and that all book entries of cash ought to be rejected as illegal evidence.

KIRKPATRICK, C. J. I agree in opinion with my brother Ford, that the verdict in this case must be set aside, though I am not willing to take such broad ground as he has taken.

A book, regularly kept, is the history of a man's daily transactions in matters of business. It contains entries of his contracts, of his bonds, bills and notes, for how much, and when payable and receivable; of his purchases and sales, of his disbursements and receipts, of labor done and services rendered, and, in short, of all his debts and credits, and of the disposition of his cash. It exhibits to him an exact state of his affairs at the end of every day. Such a book certainly would be entitled to great credit, but yet the wisdom of the common law did not admit it as evidence, for him that made it, in a court of justice. That law was too guardful of the rights of property to admit a principle which would put it in the power of any man to make evidence for himself against another. How far we have been wise in departing from it, in this respect, is a subject not now to be examined; for, however that may be, it is very certain that immemorial custom has established a different rule in this state, and has admitted the books of the party in evidence, even though they are not kept in that regular and extended form which I have mentioned, where the entries might be made to check one another; and though they contain the debtor side of the account only, which affords no such check, and that, too, without the suppletory oath of the civil law, a rule which, in the simplicity of the times in which it was introduced, might, perhaps, have answered well enough, but which, beyond all doubt, the lapse of a few years will shew to be wholly insupportable in an advanced state of society. This, however, has now become a legislative concern. The rule has become the law of the land.

The credit to which a book of the sort last mentioned is entitled as matter of evidence, is derived from the presumption, that though a man, in the warmth of controversy, or the heat of passion, might be disposed to raise up false charges against his adversaries, yet no one is so abandoned as, in his cooler moments, without such excitement, and in the course of his daily business, deliberately to contrive and meditate a fraud against his neighbor. Hence a book of daily entries, containing accounts with different people touching matters in which a man is known to deal or be employed, and which, according to the custom of the country, are usually made matter of account, has been admitted as evidence for the jury under all the circumstances of the case, while a detached paper, which might be made up for the occasion, has been wholly rejected. We have even gone so far as to admit books kept ledgerwise, as it is called, that is, where each man's account is kept by itself, if that appeared to be the general mode in which the party kept his books, *but not otherwise,* and even then with great caution, and giving them but little consideration without concurring circumstances to strengthen them and give them weight.

If this be so, then, that the party's book is to be admitted as evidence in his own favor, it must, I should think, be evidence of every thing which it contains that ought regularly to be entered in a book, unless the entry itself supposes better evidence in the power of him that offers it; as in the case of special and executory contracts, and especially touching lands, in the case of bonds, bills, notes, &c., of which a book can never be of plenary evidence, because it is not the best in the power of the party. But if there be a charge for cash advanced, or paid on account, or for cash lent, such charge, I think, does not imply that there is better evidence behind, because I believe all these things are done every day in a greater or less degree, and for a greater or less amount, without releases, receipts, or objec-

tions. If such charges, indeed, should be more frequent, or for larger sums than would be reasonable to expect from the circumstances, property, and dealings of such men, it would subject them to suspicion, and without some additional evidence would discredit them altogether; but then this is matter only for the consideration of the jury. Upon principle, I can see no reason why a book should be lawful evidence of one item, and not of another; why it should be evidence of goods sold and delivered, and not of money paid or advanced. Why should there be witnesses called, or receipts taken, in the one case more than in the other? If necessity be pleaded for the one, may it not for the other also? for they are both transactions in the common course of business, equally necessary, and, I should think, equally frequent, or nearly so. It has been holden in this court, I believe, that a naked charge of *cash*, without shewing on what account, is not good in a state of demand under the act constituting courts for the trial of small causes, but I am not aware that we have gone farther upon this subject, and that was founded upon the special provisions of the act.

In the case before us the plaintiff kept a book of daily entries from 1804 to 1811. In this book there were contained, among other things, thirteen charges against the defendant for cash paid, advanced, or lent, which, from the face of it, appeared to be regular enough. There, on one of the last leaves of the book, separated from all the other entries by sundry intervening blank leaves, and dated during the same period of time, were written six other distinct charges against the defendant *for cash*, without stating for what account, and amounting to $650. Now these last entries appear to me to be no part of the book, properly speaking, but stand precisely in the situation of a detached paper written for the purpose of this controversy, and to derive no credit at all from their being written within the cover of the book, seeing they are written upon pages wholly detached from the *daily entries and accounts*. From this

view of the case, I think these last entries ought neither to have been admitted as evidence, nor to have been made the ground of a verdict; not, however, because they are *for cash,* but because they are no part of the plaintiff's book of accounts.

ROSSELL J. I dissent from the opinion of my brethren, as being, in the first place, contrary to a number of decisions of this court, which have allowed charges of cash in a variety of instances; and secondly, as being peculiarly hard in the present case. I have taken the rule to be, that a single, or two or three charges for cash, standing alone, would not be proof sufficient to charge the defendants. But where the parties had mutual dealings, such as in their nature would warrant the idea that such charges might have happened in the course of business and be just, they ought to be left to the jury. In this case, I think, the decision not warranted by practice. The defendant below was a farmer, the plaintiff a butcher; the farmer sold to the latter fifteen cattle, and these charges were alleged to be, and were, considered by the jury as different payments on this account for cattle. The frequent demand of Joseph on Thomas, so well understood in the family, and the repeated promises of Thomas to settle with his brother, as well understood I think, would make a case not within the former decisions of this court, and a peculiarly hard one, that is, to take a large sum from the plaintiff, an illiterate man, who has the verdict of a jury to sanction his claim.

New trial granted.